UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20913-CR-WILLIAMS

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

ALI CHAMAS,

       Defendant.
_____/

## DEFENDANT'S REPLY TO GOVERNMENT RESPONSE (DE 23) TO DEFENDANT'S PSI OBJECTIONS (DE 21)

Mr. Chamas, by and through undersigned counsel, respectfully submits his Reply to the United States' Response (DE 23) to his previously-filed PSI objections (DE 21). He urges the Court to GRANT his objections for the reasons stated below and those stated in his original motion.

**Relevant Conduct**

As the Eleventh Circuit has recognized, "[w]hether two acts are part of the same course of conduct depends largely on how the relevant 'course of conduct' is defined." *United States v. Gomez*, 16 F.3d 1354 (11th Cir. 1999). The term should not be defined so broadly as to include discrete events which "only happen to be similar in kind." *See United States v. Maxwell*, 34 F.3d 1006, 1011 (11th Cir. 2006). *See also United States v. Blanc*, 146 F.3d 847, 852 (11th Cir. 1998) ("As this Court has previously held, section 1B1.3 'is designed to take account of a 'pattern of

1

misconduct that can not readily be broken into discrete identifiable units that are meaningful for purposes of sentencing.') (citations omitted).

In *Gomez*, the Eleventh Circuit held that the sentencing court erred by including as relevant conduct a quantity of cocaine that the defendant sold to an unrelated individual "near the time" he began supplying cocaine to the conspiracy alleged in the indictment. *See Gomez*, 16 F.3d at 1355-56. The prior cocaine sale was admitted at trial to prove the defendant's intent under Fed. R. Evid. 404(b), but it was "not part of the 'same course of conduct' as the conspiracy, and should not have been included in calculating [the defendant's] base offense level." *Id*. at 1356. The 11th Circuit noted that "[t]he course of conduct on which the indictment and the trial focused was the distribution of cocaine through the Sparkling City Car Wash operation," and held that "only sales that are related to the Sparkling City Car Wash operation should be considered part of the same course of conduct." *Id*.

> Looking at the issue another way, the background commentary to U.S.S.G. § 1B1.3(a)(2) states that it is generally meant to apply to offenses that "involve a pattern of misconduct that cannot readily be broken into discrete, identifiable units." When an act of misconduct can be easily distinguished from the charged offense, a separate charge is required. *See United States v. Blanc*, 146 F.3d 847, 852-54 (11th Cir.1998). In this case, the sale to Saldana is conceptually distinct from the Sparkling City Car Wash conspiracy, and easily could have been brought as a separate charge against Gomez. It was therefore inappropriate to use this sale in calculating the sentence for Gomez' conspiracy conviction.

*Id*. at 1357.

The *Gomez* Court found the case to be "virtually indistinguishable" from *United States v. Maxwell*, 34 F.3d 1006 (11th Cir. 2006), in which the Circuit Court

held that the district court clearly erred by increasing a defendant's sentence based on a prior drug scheme. The defendant was convicted in the *Maxwell of* "conspiring to distribute dilaudid and of making a single sale of cocaine to Lundy . . . as a substitute for dilaudid." *Maxwell*, 34 F.3d at 1011. The prior offense, "on the other hand, involved a cocaine distribution scheme." *Id*. Other than the defendant, the two schemes did not involve any of the same parties, and the prior offense was temporally remote, as they took place more than a year a part. *See id*. The Court concluded that there were no "distinctive similarities" between the two schemes "[t]hat signal that they are part of a single course of conduct.' Rather, the two offenses appear to be 'isolated, unrelated events that happen only to be similar in kind.'" *Id*. (quoting *United States v. Sykes*, 7 F.3d 1331 7th Cir. 1993)).

Likewise, the misconduct in this case can easily be broken down into "discrete, identifiable units." *See id*.; U.S.S.G. § 1B1.3 (comment. background). The plan to send cocaine to Instabul, Turkey was a discrete, identifiable incident, unrelated to the defendant's plan to import cocaine into the United States as charged in the indictment. The cocaine was going to different people, in different parts of the world, on different dates. Had the Turkey incident been a crime against the United States, these discrete incidents could have been charged as wholly separate offenses. As such, this Court should not include them as relevant conduct under the Guidelines. Furthermore, the Second Circuit has held that foreign crimes are excluded from relevant conduct under the Guidelines. *United States v. Azeem*, 946 F.2d 13 (2d Cir. 1991).

**Foreign Conduct**

Mr. Chamas maintains his objection and states that he is not a supporter of Hezbollah. In the first addendum to the PSI, probation states that Mr. Chamas told agents that when he sees Hezbollah with guns and rockets it makes him happy and proud to be Lebanese. These statements have been taken out of their proper context. When Agent Sanderson asked Mr. Chamas if he was happy when he sees them (referring to Hezbollah), Mr. Chamas makes clear that he feels happy *specifically* when Hezbollah is fighting against <u>ISIS, not Israel</u>. His exact response was "Against ISIS? Yes." That part of the exchange was not included in the PSI. Mr. Chamas then further explained that his father was once abducted, held captive and beaten by Hezbollah members. Again, Mr. Chamas and his immediate family members are not affiliated with Hezbollah.

This is a drug case. The insertion of Hezbollah is merely a red herring. The government has explicitly stated in its response to Mr. Chamas's PSI objections that it is not seeking any terrorist enhancement in this case but argues that his uncorroborated, uncounseled and mischaracterized statements should be considered by this Court in determining Mr. Chamas's sentence. However, there is no logical nexus between the aggravating conduct and the offense in this case. Political beliefs of extended family members are not an enumerated factor to be considered as a basis for an upward variance.

To be clear, Mr. Chamas has never sent any drugs to the United States and there is absolutely no evidence the contrary. He pled guilty because he accepts

responsibility for agreeing to send two to three kilograms of cocaine to Texas before he was arrested on unrelated charges. The government is asking this Court to consider Mr. Chamas's alleged foreign crimes at sentencing. While the Eleventh Circuit has not directly addressed this issue, it has held that 21 U.S.C. § 841 and § 846 do not apply extraterritorially. *United States v. Lopez Vanegas*, 493 F.3d 1305 (11th Cir. 20007). Thus, it follows that the government could not prosecute Mr. Chamas for the cocaine that was to be sent from Paraguay to Turkey because there is no evidence that those drugs would be possessed or distributed in the United States. See *United States v. Baker*, 609 F.2d 134, 139. (5th Cir. 1980). The governments of Paraguay and Turkey are tasked with the responsibility of prosecuting crimes against their own countries. In fact, Paraguay did exactly that. Mr. Chamas was in a Paraguayan prison already facing charges for his role in the attempted shipment of cocaine from Turkey to Paraguay when DEA agents first attempted to interview him. The agents then, with consent, reviewed Mr. Chamas's phone and discovered the conversations about a plan to send cocaine to Texas and then began the extradition process for the conduct involving the United States. As far as undersigned counsel is aware, Mr. Chamas still has to face charges in Paraguay for attempting to send cocaine to Turkey once this case is concluded and he returns to Paraguay.

For all of the reasons stated herein, Mr. Chamas asks that this Court not include the alleged foreign conduct in the offense level calculation or as grounds for an upward variance.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

BY: *s/Bunmi Lomax*
Bunmi Lomax
Assistant Federal Public Defender
Special A No. A5501975
150 West Flagler Street, Suite 1700
Miami, Florida 33130-1556
Tel: 305-530-7000
Fax: 305-536-4559
E-mail: bunmi_lomax@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on December 18, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/Bunmi Lomax*
Bunmi Lomax